UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TARA PHILLIPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:15-cv-178 PLC |
| | ) |
| NANCY A. BERRYHILL[1], | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Tara Phillips ("Plaintiff") seeks review of Acting Commissioner Berryhill's ("Defendant") denial of her applications for Supplemental Security Income and Disability Insurance Benefits under the Social Security Act (SSA).[2] Because substantial evidence supports the decision to deny benefits, the Court affirms the denial of Plaintiff's applications.

I.   Background and Procedural History

Plaintiff filed applications for Disability Insurance Benefits and for Supplemental Security Income on April 5, 2013, alleging that her disability commenced on December 31, 2010 (Tr. 192-204). The SSA denied Plaintiff's claims, and Plaintiff requested a hearing before an administrative law judge. (Tr. 73-83, 84-94, 104-05). Following a hearing, the ALJ issued a decision on August 14, 2014 and found that Plaintiff was not under a disability, within the meaning of the SSA, from December 31, 2010 through the date of the ALJ's decision. (Tr. 6-

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).
[2] The parties consent to the exercise of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No.8).

24). The SSA Appeals Council denied Plaintiff's subsequent request for review. (Tr. 1-4). Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision.

II. Evidence Before the ALJ

Plaintiff appeared with counsel at the administrative hearing. Plaintiff testified, as did three doctors: Goldstein, Akins and Watts. (Tr. 25-72).

A. Dr. Goldstein

Dr. Goldstein reviewed Plaintiff's medical records at the request of the ALJ. (Tr. 30). His description of Plaintiff's impairments was as follows: hypothyroidism, history of migraine headaches and sinusitis, and major depression. (Tr. 30-31). He identified Plaintiff's "major medical problems" as hypothyroidism. (Tr. 31) In Dr. Goldstein's opinion, none of Plaintiff's impairments individually met or equaled a listed impairment. Id. In particular, Plaintiff's hypothyroidism was controlled with medication. Id. Dr. Goldstein described Plaintiff's residual functional capacity as follows:

> I think she can definitely sit. She can use her hands. She can lift her arms. She could occasionally walk stairs.
> …
> But I think she can sit for two hours to three hours at a time. She can do that with usual breaks at least six hours a day. She can stand 30 minutes at a time, and do that at least two hours.

(Tr. 31-32)

Plaintiff's counsel cross-examined Dr. Goldstein and established that his opinions were limited to the impact of Plaintiff's hypothyroidism. (Tr. 32-34). Dr. Goldstein declined to comment on Plaintiff's anxiety, mood disorder or depression. (Tr. 34).

B. Dr. Akins

Dr. Akins, a psychiatrist, appeared at the request of the ALJ. (Tr. 35). Prior to his

testimony, Dr. Akins reviewed Plaintiff's medical records. Id. Dr. Akins did not examine Plaintiff. (Tr. 36).

Dr. Akins confirmed that Plaintiff had a mood disorder due to hypothyroidism and an alternative diagnosis of depressive disorder, "coincident to hypothyroidism." Id. Dr. Akins also stated that Plaintiff's history included anxiety around people. Id. Dr. Akins concluded that "none of the symptoms appear to have a major impact on work" so he "would have to say a listing is not met or equaled, and that's with regard to functional limitations…." (Tr. 37). On cross-examination, Dr. Akins conceded that Plaintiff's social functioning would be moderately impaired. (Tr. 41).

C. Dr. Watts

Prior to testifying, Dr. Watts, a vocational expert, reviewed written material regarding Plaintiff's work history. (Tr. 66). Dr. Watts testified that Plaintiff performed the duties of a machine operator and an industrial truck operator. (Tr. 66-67). Both jobs were semi-skilled and had an exertional level of medium. Id.

The ALJ formulated a hypothetical that included Plaintiff's educational level, exertional capabilities, physical limitations and limitations as to task. (Tr. 67). Asked by the ALJ whether Plaintiff had transferrable skills, Dr. Watts answered, "No." Id. When asked whether there were jobs an individual with Plaintiff's restrictions could perform, Dr. Watts identified "weight tester" and stated there were over 8000 jobs "being performed in the State of Missouri." (Tr. 68). Dr. Watts also opined that Plaintiff could perform "stringing machine tender" and stated that over 5000 jobs "are perform[ed] in the State of Missouri." Id.

Cross-examination revealed that unexcused absences of once or twice a month would preclude work. (Tr. 69). Likewise, frequent, daily breaks would preclude work. (Tr. 69-70).

D. <u>Plaintiff</u>

Plaintiff testified that she was 26 years old, weighed 155 pounds and was five foot nine. She lived at her parents' house with her parents. (Tr. 42). Her parents paid her living expenses. She completed the ninth grade and then married and began working. <u>Id.</u> Her last employment was in 2010 although she worked one day in 2011. (Tr. 44). Plaintiff's prior employment was as a machine operator and a forklift driver. (Tr. 46). Plaintiff testified that in 2010, at her last job, she "couldn't emotionally handle it." (Tr. 47).

Plaintiff described her "everyday activity" as consisting of the following: Arising at 10:00 a.m. or 11:00 a.m. <u>Id.</u> Does not cook, clean or wash her clothes. (Tr. 47-48). Does not grocery shop. (Tr. 48). Does not garden. (Tr. 49). Has no hobbies. (Tr. 49-50). Has no friends. (Tr. 48). Does not attend church. (Tr. 49). Watches TV, reads her mail and, occasionally, the newspaper. <u>Id.</u>

Plaintiff explained that she cannot work because "I feel very nervous around public. I feel -- I freeze up, my words and my actions freeze up around other people." (Tr. 51). Plaintiff acknowledged an ability to sit for several hours at a time, stand for ten to fifteen minutes, walk for ten to fifteen feet, and lift five to ten pounds, and stated she was limited in her stooping, bending, crouching, kneeling and crawling. (Tr. 53).

On cross-examination, Plaintiff discussed her feelings of worthlessness. (Tr. 54). She also stated that she cried "all the time." (Tr. 56). She described daily headaches and bodily shaking. (Tr. 60).

III. <u>ALJ's Determination</u>

The ALJ applied the five-step evaluation process set forth in 20 CFR §§ 404.1520, 416.920 and concluded that Plaintiff: (1) had not engaged in substantial gainful activity since

4

December 31, 2010; (2) had the severe impairments of hypothyroidism and depression; (3) and did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 9-12). The ALJ also determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: (1) lifting and carrying 20 pounds occasionally and 10 pounds frequently; (2) standing and/or walking two hours in an eight-hour workday; and (3) sitting six hours in an eight-hour workday. (Tr. 13). Plaintiff also was limited to only occasional stooping, kneeling, crouching, crawling and climbing and was required to avoid exposure to extreme cold and heat. Id. Finally, the ALJ concluded that Plaintiff was limited to performing "simple, routine and repetitive tasks and instructions" involving only occasional decision-making and interaction with co-workers and the public. Id.

The ALJ detailed, in comprehensive fashion, Plaintiff's various physical and emotional symptoms and limitations. (Tr. 13-16). However, although the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, he deemed her "statements concerning the intensity, persistence and limiting effects of these symptoms [as] not entirely credible…." (Tr. 15). In particular, the ALJ viewed Plaintiff's poor work record prior to onset of her alleged disability as suggesting she was never "well motivated to work." Id. Moreover, the ALJ concluded that Plaintiff's reported daily activities were "inconsistent with her allegations of disability symptoms and limitations." Id.

The ALJ noted that no treating or examining physician had placed "specific long-term limitations on [Plaintiff's] ability to stand, sit, walk, lift, carry, or do other basic exertional activities." Id. In addition, the ALJ saw no evidence in the record that Plaintiff's two medications were not generally effective when taken as prescribed or caused significant adverse

5

side effects. Finally, the ALJ determined that the record supported a finding that Plaintiff had been non-compliant with prescribed treatment and medications and her failure to follow prescribed treatment diminished her credibility. Id. Following a thorough review of the medical evidence, the ALJ concluded that "[t]he objective evidence, treatment history, clinical signs and medications establish a basis for the residual functional capacity" but not a conclusion that Plaintiff's symptoms and limitations are "severe enough to present any and all sustained work activity." Id.

With respect specifically to Plaintiff's psychological complaints, the ALJ referred to the consultative evaluations of Dr. John Wood and Dr. Phillip Brown. (Tr. 16-17). The ALJ noted that Dr. Wood opined that Plaintiff is capable of "understanding, remembering, and carrying out simple instructions" and has fair ability to sustain concentration, and maintain persistence on simple tasks. (Tr. 17). In addition, the ALJ noted that Dr. Wood believed that Plaintiff's ability to socially interact in a "one to one structured setting was fair to good." Id. Likewise, the ALJ noted Dr. Brown's opinion that "claimant's symptoms would not significantly impact her ability to work." Id. The ALJ accorded "significant weight" to Dr. Brown's and Dr. Wood's opinions, explaining that Dr. Brown "concluded that the [Plaintiff's] mood disorder imposes mild to moderate limitations in social and occupational functioning, and opined that the [Plaintiff] is capable of performing simple tasks." (Tr. 18). The ALJ also assigned significant weight to the opinions of the testifying, non-examining doctors, Dr. Akin and Dr. Goldstein. Id.

The ALJ determined that, considering Plaintiff's age, education, work experience and RFC, jobs exist in the national economy in significant numbers that she can perform. (Tr. 19). The ALJ acknowledged that Plaintiff's limitations impeded her ability to perform the full range of light work. Id. However, the ALJ specifically sought an opinion from the vocational expert

6

that accounted for Plaintiff's individual limitations and the impact on the number of available jobs. Id.

IV. Judicial Review

The Court must affirm the ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quotation omitted). In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). However, the court "do[es] not reweigh the evidence presented to the ALJ and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reason and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

V. Discussion

Plaintiff claims the ALJ erred in: (1) relying heavily on the findings of non-examining physicians and inaccurate statements in determining the "physical" RFC; and (2) failing to find

Plaintiff's anxiety is a "severe impairment." The Acting Commissioner counters that the record was sufficiently developed to support the ALJ's decision and the ALJ discussed Plaintiff's anxiety-related symptoms.

    A. Opinion of non-treating physicians

Plaintiff challenges the ALJ's reliance on medical experts who "testified at hearings that did not ever personally examine [Plaintiff] and simply reviewed medical records." Plaintiff claims that "such sources are not substantial evidence."

To determine a claimant's disability, the ALJ is required to consider the medical opinion evidence of record together with the other relevant evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b). "[T]he opinions of nonexamining medical sources are generally given less weight than those of examining sources." Papesh v. Colvin, 786 F.3d 1126, 1133 (8th Cir. 2013) (quoting Wildman v. Astrue, 596 F.3d 959, 967 (8th Cir. 2010)). When evaluating a non-examining source's opinion, the degree to which the opinion considers all of the pertinent evidence in the claim must be considered. Wildman, 596 F.3d at 967. "[B]ecause nonexamining sources have no examining or treating relationship . . ., the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." Papesh, 786 F.3d at 1133 (quoting 20 C.F.R. § 404.1527(c)(3)). "The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

Here, the ALJ found the opinions of the testifying medical experts, Drs. Akins and Goldstein, "persuasive and accord[ed] them significant weight." (Tr. 18). The ALJ explained that the non-treating doctors' opinions were entitled to significant weight "because they are from specialists, they are supported by explanation and by medical evidence, and they reflect a

consideration of the entire medical record by specialists who are familiar with Social Security regulations." Id. The ALJ also assigned "significant weight" to the opinions of examining physicians, Drs. Wood and Brown, "who concluded that the claimant's mood disorder imposes mild to moderate limitations in social and occupational functioning, and opined that the claimant is capable of performing simple tasks." Id.

Plaintiff does not challenge the findings of Drs. Akins and Goldstein but rather asserts that, because those doctors did not examine Plaintiff, their opinions do not constitute "substantial evidence." However, the testimony of Drs. Akins and Goldstein is not the only medical opinion evidence supporting the ALJ's RFC determination, as the ALJ also assigned significant weight to the opinions of Drs. Wood and Brown.

Contrary to Plaintiff's contentions, the ALJ did not simply draw on his own conclusions from the medical evidence. The ALJ considered all of the evidence in the record, including Plaintiff's symptoms and the extent to which they were consistent with the record evidence. The ALJ did not find Plaintiff's statements about the limiting effects of her symptoms to be credible. Moreover, the ALJ properly considered evidence that Plaintiff was not compliant with her medication protocol. The record supported a finding that, while on her medication and properly dosed, Plaintiff's thyroid symptoms were not disabling.

It is well-settled that "[a] failure to follow a recommended course of treatment also weighs against a claimant's credibility." Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005) (citation omitted). Moreover, an impairment that is "controllable or amenable to treatment [does] not support a finding of total disability." Bernard v. Colvin, 774 F.3d 482, 488 (8th Cir. 2014).

Based on the foregoing, the Court concludes that the record contained substantial

evidence to support the ALJ's RFC assessment. Although Plaintiff cites evidence that might support a contrary decision, substantial evidence supports the ALJ"s RFC determination and, as such, this Court is required to affirm.

B. Anxiety as a non-severe impairment

Plaintiff contends that the ALJ erred in failing to find that her anxiety constituted a severe impairment. More specifically, Plaintiff argues that her "anxiety is clearly medically determinable, has lasted longer than twelve months and certainly causes more than a minimal impediment to her ability to perform basic work tasks."

To demonstrate that an impairment is severe, a claimant must show that she has: (1) a medically determinable impairment or combination of impairments, which (2) significantly limit her physical or mental ability to perform basic work activities, without regard to age, education or work experience. See 20 CRR §§ 404.1520 (a)(4)(ii); 404.1521(a); 416.920(a)(4)(ii); 416.921(a). Her impairment or combination of impairments is not severe if it does "not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).

Here, substantial evidence supports the ALJ's finding that Plaintiff's anxiety did not significantly limit her ability to perform basic work activities. First, as the ALJ noted, Plaintiff received no specialized mental health treatment from a psychiatrist, psychologist or psychotherapist. See, e.g., Whitman v. Coleman, 762 F.3d 701, 706 (8th Cir. 2014) ("While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem."); Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (absence of ongoing counseling or psychiatric treatment disfavors a finding of disability).

Plaintiff's endocrinologist prescribed an anti-depressant for depression secondary to

hypothyroidism. More recently, Plaintiff also was prescribed Lexapro for depression and anxiety connected to her hypothyroidism. The ALJ found "no evidence of record that the claimant's prescribed medications are not generally effective when taken as prescribed[.]" (Tr. 15). See, e.g., Renstrom, 680 F.3d at 1066 ("conditions that can be controlled by treatment are not disabling); Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009) (same).

Additionally, the medical records reflect that Plaintiff reported anxiety and depression but that she was consistently observed to be oriented, logical, and capable of understanding and remembering. Dr. Wood, who performed a consultative psychological examination, noted that Plaintiff attributed her depression to her hypothyroidism. (Tr. 362-63). In his examination, Dr. Wood noted that Plaintiff was fully oriented and her thought processes were logical. (Tr. 362). Dr. Wood further noted that Plaintiff was capable of understanding, remembering and following simple instructions. (Tr. 363). Dr. Philip Brown, who performed a psychological evaluation of Plaintiff, was of the opinion that "[t]hough the symptoms and problems [Plaintiff] reports are numerous, they are not particularly severe enough in nature to have a major impact on her ability to work." (Tr. 870). Dr. Akins, who testified at the hearing regarding Plaintiff's mental impairments, arrived at a similar conclusion, determining that Plaintiff's mood disorder cause mild limitations in daily living, moderate limitations in social interactions and mild limitations in concentration, persistence and pace. (Tr. 38, 41).

The ALJ considered the opinions of Dr. Akins persuasive and supported by the record. The ALJ also accorded significant weight to Dr. Wood and Dr. Brown. The ALJ noted that Plaintiff's mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation. Plaintiff did not challenge the medical opinion testimony in anything but conclusory terms. Accordingly, there is no basis for a

determination that the ALJ erred in relying on the credible testimony of the four individuals who provided consistent testimony as to the impact of Plaintiff's limitations.

## IV. Conclusion

For the reasons discussed above, the undersigned finds that substantial evidence in the record as a whole supports the Commissioner's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Social Security benefits to Plaintiff is **AFFIRMED.**

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of September, 2017